**E.I. DuPONT DE NEMOURS & CO., INC., ICI Americas Inc., and Hoechst Celanese Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

and

**SKC Limited, SKC America, Inc., and Cheil Synthetics, Inc., Defendants–Intervenor.**

**Slip Op. 96–56.**
**Court No. 91–07–00487.**

United States Court of International Trade.

March 20, 1996.

---

Wilmer, Cutler, & Pickering (John D. Greenwald), Howrey & Simon (Michael A. Hertzberg, Matthew J. Clark, Maria Tan Pederson), Washington, DC, for plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael S. Kane); Priya Alagiri, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Kaye, Scholer, Fierman, Hays, & Handler (Michael P. House, R. Will Planert, Raymond Paretzky), Washington, DC, for defendants-intervenor SKC Ltd. and SKC America, Inc.

Akin, Gump, Strauss, Hauer, & Feld (Sukhan Kim, Warren E. Connelly, Damon E. Xenopoulos), Washington, DC, for defendant-intervenor Cheil Synthetics, Inc.

## OPINION

MUSGRAVE, Judge.

### Background

On December 6, 1993, the Court remanded to the International Trade Administration of the Department of Commerce ("ITA") certain issues arising from the *Final Determination of Sales at Less Than Fair Value: Polyethylene Terephthalate Film, Sheet, and Strip From the Republic of Korea*, 56 Fed. Reg. 16,305 (1991) and from the *Amended Final Determination of Sales at Less Than Fair Value: Polyethylene Terephthalate Film, Sheet, and Strip From the Republic of Korea*, 56 Fed.Reg. 25,669 (1991) (jointly referred to as *"Final Determination"*). *E.I. DuPont de Nemours & Co. v. United States*, 17 CIT 1266, 841 F.Supp. 1237 (1993). The parties in this matter now appeal the remand results announced in the ITA's subsequent *Final Remand Determination Pursuant to Court Order* (April 7, 1994) (*"Remand Determination"*). The facts and background of this case are exhaustively canvassed in the Court's decision ordering a remand; in obedience to *lex parsimoniae*, the Court assumes familiarity with that decision and the posture of this case.

In remanding the case, the Court ordered the ITA to reconsider four aspects of the *Final Determination*. Three of those required reconsideration in light of the intervening decision by the United States Court of Appeals for the Federal Circuit ("CAFC") in *IPSCO, Inc. v. United States*, 10 Fed.Cir. (T) ——, 965 F.2d 1056 (1992) (*"IPSCO Appeal"*), which was published after the briefs were filed in the appeal from the *Final Determination* in the instant case. *IPSCO Appeal* reversed the United States Court of International Trade decision in *Ipsco, Inc. v. United States*, 13 CIT 402, 714 F.Supp. 1211 (1989), which had held that in determining foreign market value by way of constructed value calculations, the costs of production of prime grade and off-grade co-products should be allocated proportionately to their market values. In reversing, the CAFC reasoned,

> The broad terms of section 1677b(e) sweep within constructed value all components of the actual production costs of merchandise.... The broad language of section 1677b(e) does not at any point expressly authorize adjustment of these production costs to account for products of a lower grade or less value. [Under the lower court's analysis], the value of Ipsco's products—their prices in the United States—became a factor in determining their cost of production. That cost of production, in turn, determined by Ipsco's prices in the United States reflected fair value. Essentially, the trial court ordered an unreasonable circular methodology. The selling price of pipe became a basis for measuring the fairness of the selling price of pipe. This circular reasoning contravened the express requirements of the statute which set forth the cost of production as an independent standard for fair value.

10 Fed.Cir. (T) at ——, ——, 965 F.2d at 1059, 1060.

Recognizing the potential impact of *IPSCO Appeal* on certain calculations performed by the ITA in its *Final Determination*, the Court, in the case here under consideration, remanded and issued the following mandates:

> **ORDERED** that the ITA shall reexamine its choice of methodology for calculating the production costs incurred by [defendants intervenor] SKC and Cheil in producing off-grade PET [ (Polyethylene Terephthalate) ] films in light of the reversal of *IPSCO, Inc. v. United States*, 13 CIT 402, 714 F.Supp. 1211 (1989), *rev'd*, 965 F.2d 1056 (1992); and it is further
>
> **ORDERED** that the ITA shall reexamine its choice of cost accounting methodology for the calculation of Cheil's recycled scrap film in light of *Ipsco's* reversal; and it is further
>
> **ORDERED** that the ITA shall reexamine or comment on the effect of *Ipsco's* reversal upon its choice of SKC's product specific cost accounting methodology; ...

841 F.Supp. at 1254. The Court also faulted the ITA's methodology for calculating value added tax ("VAT") adjustments, and it

> **ORDERED** that the ITA shall recalculate the VAT adjustments to USP [ (United States Price) ] in accordance with the requirements of 19 U.S.C.

§ 1677a(d)(1)(C), not the general language of 19 U.S.C. § 1677b(a)(4)(B); ...

*Id.*

In its *Remand Determination,* the ITA recalculated the production costs incurred by SKC and Cheil in producing off-grade PET film. All parties concur that this altered approach for calculating off-grade PET film production costs should be upheld, although plaintiffs dispute the accuracy of some of the figures contained in the calculations. The ITA did not alter its accounting methodology for valuing Cheil's recycled scrap film ("pellet"). Plaintiffs contest this methodology and argue that a similar flawed methodology infects the valuation of SKC's pellet. Nor did the ITA swerve from its decision in the *Final Determination* to accept the product specific cost figures submitted by SKC, which decision plaintiffs also contest. The disputed VAT issue is controlled by the CAFC's recent decision in *Federal Mogul v. United States,* 13 Fed.Cir. ——, 63 F.3d 1572 (1995).

## Standard of Review

■ The Court must find that antidumping determinations are unlawful when they are unsupported by substantial evidence on the administrative record or are otherwise not in accordance with law. 28 U.S.C. § 1581(c); Tariff Act of 1930, § 516A(b)(1)(B), as amended, 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). "[Substantial evidence] is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the

agency's investigation or question the agency's methodology." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 404–05, 636 F.Supp. 961, 966 (1986), *aff'd* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## Discussion

### 1. Production Costs Incurred in Producing Off–Grade PET Film

■ The ITA's recalculations of production costs incurred by SKC and Cheil in producing off-grade PET film properly respect the rule announced in *IPSCO Appeal* and are based on substantial evidence. In its *Final Determination,* the ITA had allocated the costs of producing off-grade PET film according to the film's value. In its *Remand Determination,* the ITA rectified its methodology by conforming it to the logic of *Ipsco Appeal:*

[A]s directed by the Ipsco Appeal ..., we have recalculated SKC's [cost of production ("COP")] and [constructed value ("CV")] of off-grade film to reflect actual costs by allocating production costs based on actual production quantities, rather than accounting for value. As a result, COP and CV for SKC have been calculated so as to take into account the actual costs of prime and non-prime production of the same product.... After further review we have determined that the record, in the case of Cheil, provides adequate information on which to base product specific cost calculations. Therefore, we have accepted Cheil's submitted CV and COP costs, adjusted to reflect actual, product specific costs rather than product group costs.

*Remand Determination* at 6–8 (emphasis added). Plaintiffs agree with defendants that this altered approach is consistent with *IPSCO Appeal,* but they contest the ITA's reliance on defendants'-intervenor reported pellet costs as well as SKC's reported product specific costs. Subject to the controversy over the reported cost figures, plaintiffs urge the Court to uphold the methodology employed in the *Remand Determination* for evaluating off-grade PET film production costs. The Court finds that the valuation

methodology of the *Remand Determination* is a lawful application of the *IPSCO Appeal* doctrine because it accounts for all costs and does not rely on resale prices to make cost calculations. Moreover, as discussed *infra,* the ITA's use of the disputed cost figures is based on substantial evidence and is otherwise in accordance with law. Therefore, the Court upholds the ITA's *Remand Determination* with respect to the production costs of producing off-grade PET film.

As an ancillary issue, plaintiffs request a remand so that the ITA may explain why it believes that the *IPSCO Appeal* valuation methodology is relevant to the calculation of Cheil's test film production costs. Cheil's records denote the total volume of test film produced during any particular period without specifying the relative volumes by kind. In order to establish the relative volumes of different kinds of test film produced during the period in question, Cheil allocated total test film volume among PET film production in proportion to known production ratios of PET film. As a simplified example, if Cheil produced 10% of a certain type of film during the period of investigation, it allocated 10% of test film production to that type. In this manner, Cheil allocated the full quantity of test film to film types. Cheil then allocated cost pools for material, labor, and fabrication equally among test, prime grade, and off-grade film by type. The ITA accepted these figures in its COP and CV calculations.

█ Plaintiffs concede that with respect to prime grade and off-grade film, the equal allocation of cost pools was reasonable, conformed to the requirements of *IPSCO Appeal,* and to that extent the remand results should be affirmed. Nevertheless, plaintiffs question this methodology as applied to test film and request a remand so that the ITA may explain the relevance of the *IPSCO Appeal* valuation methodology to the costing of test film. Cheil represents that the production of test film is an ongoing research and development activity, and the Court discerns no evidence in the record suggesting that Cheil's test film was disproportionately produced in connection with certain types or grades of film. In the absence of contrary evidence, the ITA employed a reasonable methodology when it allocated the total volume of test film in proportion to the known production ratios of PET film types. The relevance of *IPSCO Appeal* to the costing of test film is manifest because that opinion requires overall COP and CV calculations to reflect actual costs, and COP calculations for test film were parcel to the overall COP and CV calculations of the single class of subject merchandise identified by the ITA, *i.e.* "PET film." *Final Determination* at 16306. The production of test film, although purely a research and development activity, was a component cost of overall PET film production along with prime and off-grade production costs; accordingly, *IPSCO Appeal* requires that all of these components be valued pursuant to a method that fully comprehends production costs. The ITA was persuaded, as is the Court, that the reported costs provided credible and sufficient data for determining test film production costs in proper conformity with *IPSCO Appeal* ("[a]fter further review we have determined that the record, in the case of Cheil, provides adequate information on which to base product specific cost calculations. Therefore, we have accepted Cheil's submitted CV and COP costs, adjusted to reflect actual, product specific costs...." (*Remand Determination* at 7–8)). The ITA's costing of test film is based on substantial evidence in the record and is otherwise in accordance with law.

### 2. The Valuation of Cheil's Pellet

█ The ITA revisited its cost accounting methodology for valuing Cheil's pellet (recycled scrap film) in light of *IPSCO Appeal,* and its decision to retain the figures and methodology used in the *Final Determination* is based on substantial evidence and is in accordance with law. Cheil uses a "net realizable value" ("NRV"), *i.e.,* the potential resale value, to account for the pellet utilized and produced in its film production process. Every production run of PET film utilizes both virgin material ("chip") and pellets, and every run also produces scrap film. The scrap film is recycled into pellets, which in later runs are used like and are substitutable for virgin chip. In accounting for the costs of producing PET film, Cheil included both the cost of the virgin chip utilized as well as

the NRV of the pellet input. Cheil then subtracted the NRV of the pellets resulting from the run from the cost of production. This accounting methodology ensured that the final PET film cost of production figures would capture the full value of all material inputs as required by *IPSCO Appeal* ("[t]he broad terms of section 1677b(e) sweep within constructed value all components of the actual production costs of merchandise." 10 Fed. Cir. (T) at ——, 965 F.2d at 1059). Plaintiffs' argument that pellets should be costed like virgin chip because they are functionally equivalent defies common sense and arithmetical logic. The reason that PET film production utilizes recycled material is that it is cheaper to recycle scrap film than to manufacture virgin chip; this being the case, assigning pellets the cost of virgin chip would overstate the actual costs of PET film production. Plaintiffs' allegation that Cheil manipulated the usage rate of pellet in order to shift costs away from PET film exported to the United States is devoid of any evidentiary basis. Cheil's cost accounting for pellet was verified by the ITA, is GAAP consistent, and ensured that the cost of using recycled material would be fully reflected in the cost of PET film. The ITA's *Remand Determination* with regard to this issue is based on substantial evidence, is consistent with *IPSCO Appeal*, and is otherwise in accordance with law.

Plaintiffs' argument that a similar flawed methodology infects the valuation of SKC's pellet is unconvincing and untimely. Plaintiffs argue that SKC's method for valuing pellet is fatally flawed because SKC assigns a "zero value" to pellet. However, the reason for this "zero value" is that SKC did not subtract the value of pellets resulting from PET film production runs from the accounting cost of producing PET film; therefore, there was no basis for adding any pellet value back into the accounting cost of PET film manufactured with pellet material input. Yet it is not even necessary to discuss the substantive merits of this claim. The Court's remand order did not direct the ITA to revisit SKC's costing of pellet, and with good reason. Plaintiffs failed to raise this issue at the administrative level. The issue of *Cheil's* costing of pellet was raised for purposes of the *Final Determination* (*Final Determination* at 16316), but nowhere in that determination was there any discussion of SKC's costing of pellet. Nor is there any other indication that plaintiffs raised the issue at the administrative level in a fashion sufficient to give rise to specific claims that would put the ITA on notice that SKC's methodology for costing pellet was squarely at issue. It is not sufficient merely to raise pellet costing as a general policy issue or attack a co-respondent's methodology for such costing. Investigating accounting procedures is a fact and theory intensive process that cannot be adequately addressed after the ITA's investigation has concluded. Plaintiffs' desultory approach to this issue was also demonstrated at the hearing before the Court: it was the *government* who raised the issue of SKC's pellet accounting methodology during the very last minutes of the lengthy hearing, to which counsel for plaintiffs replied, "*I had not expected those last few points to be raised and the government having done so gives me an opportunity to say something that I've been holding back which was that this whole case was an extraordinarily sloppy job from beginning to end....*" (Tr. at 71–2) (emphasis added). The Court was convinced after the hearing, and upon consideration of all relevant documents before the Court, that SKC's methodology for valuing pellet was not within the appropriate scope for remand, and therefore the Court ordered a remand on this issue only with respect to Cheil. 841 F.Supp. at 1254. The ITA's intentional refusal to address SKC's methodology for valuing pellet was proper under the scope of the remand ("[W]e agree with SKC that the explicit instructions of the remand order does [sic] not direct us to re-examine SKC's valuation of pellets," *Remand Determination* at 10). Even if it had been part of the remand order, SKC's methodology is reasonable and fully accounts for the value of pellet in conformance with *IPSCO Appeal*.

As a general argument, plaintiffs contest the finding by the ITA that pellets are a by-product rather than a co-product of PET film. The ITA reasoned,

> We agree with respondents and did not adjust our methodology for calculating

costs of Cheil's pellets because we believe that the *IPSCO Appeal* dealt with the valuation of finished co-products. Because we consider pellets not to be co-products of the PET film production process that later serve as raw material for the same process, the *IPSCO Appeal* does not apply to this issue. We note that the Court did not specifically instruct us in the remand order to examine the issue of why the Department considers pellets as co-products or by-products in light of the *IPSCO Appeal* and, therefore, we need not further address this issue.

*Remand Determination* at 10. If pellets were a co-product of PET film, then *IPSCO Appeal* would require the valuation of pellets to be based on actual production costs rather than on the NRV potential resale value. The ITA's investigation revealed that pellets are produced from "edge trimmings and other scrap film" (*Final Determination* at 16316), not from off-grade PET film. The circumstances of this case are vastly different from the facts in *IPSCO Appeal* where two grades of pipe, both subject to the antidumping investigation, were produced during the same process and were sold as finished goods. Edge trimmings and other scrap pieces are neither finished goods nor merchandise subject to the instant antidumping investigation; rather, they are by-products of the PET film manufacturing process. Trimmings and scrap undergo substantial transformation in order to be reformulated into usable pellet, which itself is neither sold on the open market nor subject to the antidumping investigation. The recycling process does not disinvest the recycled material from its by-product character, regardless of whether the recycled product hypothetically could be sold on the open market. ITA's determination that pellets are by-products and outside the co-product valuation rule of *IPSCO Appeal* is based on substantial evidence and is in accordance with law.

### 3. The Use of SKC's Product Specific Cost Figures

█ The ITA properly responded to the Court's order to "reexamine or comment on the effect of *Ipsco*'s reversal upon its choice of SKC's product specific cost accounting methodology" (841 F.Supp. at 1254). In the *Remand Determination,* the ITA did not alter the position it assumed in the *Final Determination.* SKC's in-house accounting procedures calculated average costs for PET film production but did not maintain product specific cost figures. Hence, SKC derived product specific costs for different types of film in order to respond to the questionnaire submitted by the ITA. On remand, the ITA explained,

> We have accepted SKC's submitted CV and COP costs, adjusted to reflect actual, product specific costs rather than value based costs. We determined that SKC's verified cost accounting methodology, upon which reported product specific actual costs were based, was reasonable under the *IPSCO Appeal.* The *IPSCO Appeal* held that production costs must be based on the actual costs of producing the merchandise. *SKC's methodology takes into account its actual costs by adequately ensuring that all raw material costs (including those attributable to pellets) were included in the COP calculation for the PET film product.* The *IPSCO Appeal* does not indicate that the department should not accept a verified product specific cost accounting methodology which takes into account actual costs. Therefore, our acceptance of these costs was appropriate and requires no change.

*Remand Determination* at 11 (emphasis added). Plaintiffs contend that the derived product specific costs and the proffered composite pellet to virgin chip usage ratios were not verified and did not reflect actual costs. However, the ITA performed an adequate investigation and verification, some of which was performed during a week-long on-site inspection in Korea: (1) the ITA verified that SKC's reported usage rates were consistent with the amounts of inventory, material consumed and finished product; (2) the ITA verified that SKC had accurately calculated standard pellet usage rates for each type and thickness of film; and (3) the ITA verified SKC's calculations against production documents that operated as business records both for accounting and inventory purposes. These steps, *inter alia,* operated both as a

reasonable verification procedure and as a confirmation that actual costs were reflected in the derived product specific costs as required by *IPSCO Appeal.* Plaintiffs' allegations that the verification was insufficient mischaracterize the scope and depth of the verification procedure: "Verification is a spot check and is not intended to be an exhaustive examination of the respondent's business." *Monsanto v. United States,* 12 CIT 937, 944, 698 F.Supp. 275, 281 (1988). The examination of *bona fide* and complete questionnaire data combined with the review of business records and on-site verification satisfied the ITA's duty to conduct a thorough investigation. The ITA's *Remand Determination* embracing SKC's product specific costs is based on substantial evidence and is in accordance with law.

### 4. The Method Employed in Making VAT Adjustments to USP

■ The ITA's recalculation of VAT adjustments to United States Price ("USP") is not in accordance with law under *Federal Mogul v. United States,* 13 Fed.Cir. ——, 63 F.3d 1572 (1995). In its *Remand Determination,* the ITA "adjusted USP for tax by multiplying the home market *tax rate* by the USP at the point in the chain of commerce of the U.S. merchandise that is analogous to the point in the home market chain of commerce at which the foreign government applies the home market consumption tax." *Remand Determination* at 2 (emphasis added). In *Federal Mogul,* the CAFC approved the methodology of taking "the tax *amount* paid in the home market for the same merchandise and add[ing] that amount to the price actually paid in the United States" in order to achieve a tax-neutral comparison. 13 Fed.Cir. at ——, 63 F.3d at 1576 (emphasis added). *Federal Mogul's* admonitions encouraging judicial deference to administrative determinations do not permit the Court to approve the methodology employed by the ITA in the instant case because that opinion exclusively sanctioned the adjustment to USP by the amount, not the rate, of the VAT. The manufacturer was the plaintiff in *Federal Mogul,* and it took the position that a rate adjustment, rather than an amount adjustment, was permissible: the court de-

clared, "The method for adjusting the tax impact urged by plaintiffs improperly conflates [the issues]." 13 Fed.Cir. at ——, 63 F.3d at 1580. Defendants' request for a remand on this issue is granted so that the ITA may make the VAT adjustments consistently with the opinion in *Federal Mogul.*

### Conclusion

The ITA's *Remand Determination* ordered by the Court in *E.I. DuPont de Nemours & Co. v. United States,* 17 CIT 1266, 841 F.Supp. 1237 (1993) is lawful and based on substantial evidence with respect to the following issues: 1) the calculation of production costs incurred by Cheil and SKC in producing off-grade PET film; 2) the accounting methodology for calculating Cheil's recycled scrap film; and 3) the acceptance of the product specific cost accounting figures submitted by SKC. The ITA's method for making VAT adjustments is not in accordance with law under *Federal Mogul v. United States,* 13 Fed.Cir. ——, 63 F.3d 1572 (1995). Accordingly, the Court remands the VAT issue so that the ITA may recalculate the VAT adjustments consistently with the rule announced in *Federal Mogul.*

### ORDER

This action having been submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the ITA's *Final Remand Determination Pursuant to Court Order* (April 7, 1994), ordered by the Court in *E.I. DuPont de Nemours & Co. v. United States,* 17 CIT 1266, 841 F.Supp. 1237 (1993), be, and hereby is, upheld with respect to the following issues: (1) the calculation of production costs incurred by Cheil and SKC in producing off-grade PET film; (2) the accounting methodology for calculating Cheil's recycled scrap film; and (3) the acceptance of the product specific cost accounting figures submitted by SKC; and it is further

**ORDERED** that the ITA's *Final Remand Determination Pursuant to Court Order* (April 7, 1994) be remanded with respect to the methodology employed for calculating

VAT adjustments to USP, such that the calculations may be modified consistently with the tax-neutral methodology sanctioned under *Federal Mogul v. United States*, 13 Fed. Cir. ——, 63 F.3d 1572 (1995); and it is further

**ORDERED** that the remand results shall be filed with the Court within sixty (60) days; and it is further

**ORDERED** that any party contesting the remand results shall file comments within thirty (30) days of those results; and it is further

**ORDERED** that the ITA shall have fifteen (15) days after the final date for filing comments to file a response.